UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

MARIO GONZALEZ,

                          Plaintiff,

            -against-

W.S. PLILER,

                       Defendant.

------------------------------------------------------------------X

**REPORT & RECOMMENDATION**

**22-CV-9602 (JLR) (JW)**

**To the Honorable Jennifer L. Rochon, United States District Judge:**

Mario Gonzalez ("Petitioner" or "Gonzalez"), who is incarcerated at the Federal Correctional Institution in Otisville, New York ("FCI Otisville"), brings a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking to expunge from his Bureau of Prison's ("BOP") disciplinary record an incident report and restore 41 days loss of good conduct credits. For the reasons discussed below, the Court recommends the petition be **DENIED**.

## I.     BACKGROUND

### A. Petitioner's Conviction and Sentence

On September 7, 1994 Petitioner was sentenced to 360 months for robbery of auto/armed carjacking in violation of 18 U.S.C. § 2119(3) and to 60 months for use and carry of a firearm in relation to a crime of violence and aiding and abetting in

violation of 18 U.S.C. s.924(c)(1)(3); the sentences are to be served consecutively.  Dkt. No. 15 at 6.  Petitioner has been incarcerated at FCI Otisville since May 14, 2018.  Id.

## B. The Disciplinary Record

### 1. The Incident

On January 2, 2022, FCI Otisville staff observed Petitioner behaving in a way that suggested that Petitioner was under the influence of an illicit substance.  See Dkt. No. 16-4 at 7 ("Original Incident Report"); Dkt. No. 16-4 at 5 ("Rewritten Incident Report").  Cook Supervisor J. Keahon first observed Gonzalez "stumbling, staggering and completely incoherent" in the FCI Kitchen, and notified Operations Lieutenant J. Nalepa.  Orig. Incident Report.  Upon arrival at the kitchen, Nalepa "observed the same behavior" and escorted Gonzalez to the Lieutenants Office for further investigation.  Dkt. No. 16-4 at 9 ("Staff Memorandum").  Gonzalez "could not stand still, follow staff directives, or formulate sentences when speaking," and "could not state his register number, or what the day or date was."  Id.  After confirming that Gonzalez was not on any medication that would cause these behaviors, Gonzalez was medically assessed, photographed, breathalyzed, and made to submit a urine sample for analysis.  Id.

Gonzalez's medical analysis revealed a "sluggish pupil response, slurred[]/slow speech, and loss of fine motor coordination."  Dkt. No. 16-4 at 10.  The analysis notes that Gonzalez was "laughing at inappropriate times, fail[ed] to answer simple questions, and fail[ed] to follow simple commands," and concludes that Gonzalez was "obviously under the influence of an illicit substance."  Id.

The breathalyzer results were negative, but the same-day urine analysis test was positive for buprenorphine.[1]  Dkt. No. 16-4 at 3.

On January 7, 2022 the Original Incident Report was rewritten to add additional details of staff observations of Gonzalez and the results of the medical assessment, the breathalyzer, and the initial urine sample test.  Notably, the place of incident was changed from "Unit EB Cell 405L" to "FCI Food Service;" the incident category was changed from "Use of any narcotics… not prescribed" to "Conduct which disrupts, most like use of narcotics;" and the prohibited act code was updated from "112" to "199 most like 112."  Orig. Incident Report; Rewritten Incident Report.

On January 11, 2022 an outside lab reported that the urine sample tested negative for buprenorphine.  Dkt. No. 16-5 at 3.

### 2. The Disciplinary Hearing Officer Meeting and Petitioner's Sanctions

On January 8, 2022, advanced written notice of the Incident Report was provided to Gonzalez.  Dkt. No. 16-4 at 2.  On January 13, 2022, Gonzalez was given a Notice of Discipline hearing and Gonzalez acknowledged that he had read and understood his rights.  Id. at 2, 12-5; Dkt. No. 15 at 9.

On January 25, 2022, a disciplinary hearing officer ("DHO") meeting was held, where Petitioner declined to be represented by a staff member, declined to call

---

[1] The record refers to both buprenorphine and suboxone, which are functionally interchangeable terms.  See Dkt. No. 15 at 6, n. 1.

3

witnesses, and declined to make a statement in his defense.  Dkt. No. 16-4 at 13; Dkt. No. 15 at 9.

On March 11, 2022, Gonzalez was advised that the DHO had determined that he "committed the act of Conduct which disrupts most like use of any narcotics, Code 199 most like 112."  Dkt. No. 16-4 at 3.  In reaching her determination, DHO Yancy Matteau ("Matteau") considered the rewritten incident statement, the staff memorandum, the medical report, and Petitioner's lack of a statement in his own defense.  Dkt. No. 16 ¶ 3; Dkt. No. 16-4 at 3.  Petitioner was sanctioned with the loss of 41 days of good conduct time, 45 days of disciplinary segregation, and the loss of commissary and telephone privileges for one year.  Dkt. No. 16-4 at 4.  Dkt. No. 15 at 9-10; Dkt. No. 16, ¶ 3; Dkt. No. 16-4 at 3; Dkt. No. 15 at 11.

### 3.  Petitioner's Administrative Appeals

#### a.  Regional Administrative Remedy Appeal

On March 18, 2022, Petitioner submitted a Regional Administrative Remedy Appeal, requesting that the incident report be expunged due to irregularities in the disciplinary process.  Dkt. No. 15 at 11; Dkt. No. 1 at 14-5.  Petitioner argued that the negative urinalysis lab result, a failure to consider alternative explanations for his behavior, and inconsistencies between the original and rewritten incident report require that the sanctions be lifted and the report expunged.  Id. at 14-5.

On May 20, 2022, the Acting Regional Director S. R. Grant denied Petitioner's Regional Administrative Remedy Appeal on the grounds that Matteau reasonably determined that Petitioner committed the prohibited act, and that a review of the

disciplinary proceedings revealed no due process concerns nor deviations from policy. Dkt. No. 15 at 12; Dkt. No. 1 at 13.

   *b. Central Office Remedy Appeal*

On June 21, 2022, Petitioner submitted a Central Office Remedy Appeal, arguing that he was deprived of due process because of inconsistencies in the re-written incident report following receipt of the negative outside lab test, failure to consider sleep deprivation as an alternative explanation for his behavior, and the fact that the DHO did not order a blood sample to further test for the presence of drugs. Dkt. No. 15 at 12; Dkt. No. 1 at 26.

On August 5, 2022, Ian Connors, the Administrator of National Inmate Appeals denied Petitioner's Central Office Remedy Appeal, concurring with the Acting Regional Director that there was no violation of due process and that Matteau's decision was reasonable and supported by evidence.  Dkt. No. 1 at 11; Dkt. No. 15 at 8.

### 4. Petitioner's Habeas Petition

On November 9, 2022 Petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2241, requesting leave to appeal on the grounds that his due process rights were violated because (1) the DHO erroneously found him "guilty" of being under the influence of a narcotic without sufficient evidence; (2) there were irregularities surrounding the disciplinary hearings; and (3) the sanctions are arbitrary, *inter alia*. Dkt. No. 1, ¶¶ 9–17.

## II.    LEGAL STANDARD

### A. Standard for Habeas Review

A writ of habeas corpus may be granted to a prisoner "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3). "A petition for a writ of habeas corpus under § 2241 allows a federal inmate to challenge the 'execution of his sentence' after conviction, rather than the imposition of the sentence itself."  Rosales v. Petrucci, No. 20-CV-2136 (CS), 2021 WL 5449701, at *3 (S.D.N.Y. Nov. 22, 2021) (quoting Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001)).  Consequently, "[t]he proper vehicle for a challenge to the BOP's calculation of earned time credit is a petition for a writ of habeas corpus under 28 U.S.C. § 2241."  Sanchez v. Warden at F.C.I. Hazelton, No. 24-CV-1251 (LTS), 2024 WL 1969792, at *2 (S.D.N.Y. May 1, 2024); see also Frazer v. Petrucci, 2019 WL 5887302, at *2 (S.D.N.Y. Nov. 8, 2019) ("habeas relief under 28 U.S.C. § 2241 is the correct vehicle" for a claim that "the BOP has calculated [good time] credits incorrectly").

Critically, "[t]he petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'"  Harriot v. Jamison, 24-CV-208 (AT) (JLC) 2024 WL 2981150, *2 (S.D.N.Y. June 13, 2024) (quoting Skaftouros v. United States, 667 F. 3d 114, 158 (2d Cir. 2011).

## B. *Pro Se* Litigants

Submissions by *pro se* litigants are to be examined with "special solicitude," Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); see Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018), and "held to less stringent standards than formal pleadings drafted by lawyers," Hughes v. Rowe, 449 U.S. 5, 9 (1980) (per curiam). Nevertheless, "mere conclusory statements… do not suffice," and district courts "cannot invent factual allegations" that the petitioner has not pleaded. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

## C. Due Process Standard

"The due process protections afforded a prison inmate do not equate to the full panoply of rights due to a defendant in a criminal prosecution." Sira v. Morton, 380 F. 3d 57 (2d Cir. 2004) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)) (internal quotations omitted). "Notably, there is no right to counsel or to confrontation at prison disciplinary hearings." Id. (citing Wolff, 418 U.S. at 567-70). However, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." Id. (citing Wolff, 418 U.S. at 563-67; accord Luna v. Pico, 356 F.3d 481, 487).

A prison disciplinary hearing merely requires that there be "some evidence" supporting the findings, which is satisfied "if there is *any* evidence in the record that supports the disciplinary ruling." Sira, 380 F. 3d at 69 (citing Hill, 472 U.S. at 447; citing Friedl v. City of New York, 210 F. 3d 79, 85 (2d Cir. 2000)) (internal quotations omitted) (emphasis in original). The Second Circuit interprets "some evidence" to require "reliable evidence." Sira, 380 F. 3d at 76 (citing Luna v. Pico, 356 F. 3d 481, 488 (2d Cir. 2004)); Hernandez v. Selsky, No. 06-CV-4399 (RJH), 572 F. Supp. 3d 446, 452 (S.D.N.Y. 2008). Although "extremely tolerant, this standard requires some inquiry to determine whether the totality of the facts and circumstances reasonably supports the proffered conclusion." Leinheister v. Pilier, No. 21-CV-1191 (GBD) (VF) 2025 WL 845944, at *4 (S.D.N.Y. Mar. 18, 2025) (quoting Sira, 380 F. 3d at 80) (internal quotation marks omitted).

Critically, a district court's role in determining whether a Hearing Officer's decision is supported by some evidence in the record "'does not require… independent assessment of the credibility of witnesses [] or weighing of the evidence.'" Leinheiser, 2025 WL 845944, at *4 (quoting Hill, 472 U.S. 455-56). "Instead, the relevant question is whether there is any [reliable] evidence in the record that could support the conclusion reached by the disciplinary board." Id. (internal quotation marks omitted).

### III.    DISCUSSION

Before turning to Petitioner's arguments, this Court first considers whether Petitioner has exhausted all administrative remedies.

8

## A. Exhaustion of Administrative Remedies

"The Second Circuit has established that a prerequisite to federal habeas corpus relief pursuant to § 2241 is the exhaustion of administrative remedies." Donte McClellon, Petitioner, v. Rickard, Warden of FCI Otisville, et al., No. 24-CV-10053 (VSB) (BCM), 2025 WL 3286917, at *6 (S.D.N.Y. June 24, 2025) (quoting Rosenthal v. Killian, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (internal quotations omitted) (citation omitted). Administrative remedies must be exhausted in accordance with the BOP's four-step Administrative Remedy Program, which allows an inmate to "seek formal review of an issue relating to any aspect of his/her own confinement." Donte McClellon, 2025 WL 3286917, at *6 (quoting 28 C.F.R. § 542.10(a)) (internal quotations omitted). See generally 28 C.F.R. §§ 542.10–.19.

Inmates must exhaust each of the four steps in the Program: first, by attempting to resolve the issue informally, see id. § 542.13; second, by submitting a formal written Administrative Remedy Request ("Request") to the institution at which the inmate is housed, see id. § 542.14; third, by appealing an unfavorable decision at the institutional level to the Regional Director of the BOP, see id. § 542.15; and fourth, by appealing an unfavorable decision at the regional level to the BOP's General Counsel. See id. See also Rosenthal v. Killian, 667 F. Supp. 2d 364, 366, No. 09-CV-5194 (VM) (S.D.N.Y. 2009).

As detailed in Section II. C. *supra*, this Court is satisfied that Petitioner has exhausted his administrative remedies pursuant to the BOP's four-step program, and has fully complied with 28 C.F.R. §§ 542.10–.19.

## B. Sufficiency of the Evidence

Petitioner asserts that the negative urinalysis lab test result, in addition to his ability to comply with requests for a breathalyzer and urine sample, outweigh the evidence supporting his sanctions. Dkt. No. 1, ¶¶ 9–17. Additionally, Petitioner argues that the DHO failed to account for alternative explanations for his behavior, including his diet and sleep deprivation. Id. at ¶ 13.

The Government argues that the eyewitness accounts of Petitioner's behavior satisfy the tolerant "some evidence" standard. Dkt. No. 15 at 11–5.

Notwithstanding the negative lab result and Petitioner's ability to comply with instructions from FCI Otisville staff, it is clear that there was "some evidence" before the DHO "that could support the conclusion reached." Sira, 380 F. 3d at 76 (quoting Hill at 455-56) (internal quotation marks omitted). Specifically, the DHO decision relied upon the rewritten incident statement, the staff memorandum, and the medical report. Dkt. No. 16 ¶ 3; Dkt. No. 16-4 at 3. District courts regularly find that reports memorializing the observations of prison staff satisfy the "reliable evidence" standard. See Crum v. Billingsby, No. 11-CV-2979 (GBD) (RLE) 2014 WL 2855030, at *3 (S.D.N.Y. June 20, 2014) (finding an incident report alone sufficient to comply with the "some evidence" standard); Livingston v. Kelly, 423 F. App'x 37, 40 (2d Cir. 2011) (finding sufficient support for disciplinary hearing decision based on eyewitness officer testimony); Leinheiser, 2025 WL 845944, at *4 (same). Because "even a 'modicum' of evidence is sufficient to uphold a prison sanction," this Court concludes

that there was sufficient evidence in the record to support the DHO's decision. <u>Crum</u>, 2014 WL 2855030, at *3 (quoting <u>Hill</u>, 472 U.S. at 456).

Petitioner's additional argument that the DHO failed to consider alternative explanations for the observations of FCI Otisville staff does not overcome the tolerant "some evidence" standard, where the reliable evidence in the record on its own is sufficient for the DHO to have sanctioned Petitioner. <u>Pilier</u>, 2025 WL 845944, at *4.

## C. The BOP Afforded Petitioner All Requisite Procedures

Petitioner notes that the change in the incident category from "Code 112" to "199 most like 112" between the Original Incident Report and the Rewritten Incident Report reveals an irregularity that violates due process, arguing that the updates were made following receipt of the negative outside laboratory test. Dkt. No. 1, ¶ 11.

The Government asserts that Petitioner's belief that the incident report was rewritten based on the negative results from the outside laboratory is irrelevant and unfounded, that there is nothing *per se* improper about rewriting an incident report, and that Petitioner was afforded all procedural safeguards required by due process. Dkt. No. 15 at 19–20.

Petitioner's claim that the Incident Report was updated in response to the negative lab test lacks merit because the lab test was received four days after the rewrite. <u>See</u> Rewritten Incident Report (produced January 7, 2022 and provided to Petitioner on January 8, 2022); Dkt. No. 16-5 at 3 (negative lab test received January 11, 2022). Further, as the Government highlights, there is no *per se* due process

11

violation for rewriting an incident report to provide updates or correct errors. Colon v. Tellez, No. 20-CV-5252, 2022 WL 521524, *5 (E.D.N.Y. Feb. 22, 2022).

As required by Wolff, Petitioner was afforded advance written notice of the charges against him, an opportunity to call witnesses and present documentary evidence, a fair and impartial hearing officer, and a written statement of the disposition which included the evidence relied upon and reasoning behind the sanctions. Sira, 380 F. 3d at 69. See Dkt. No. 16-4. Evidence that Petitioner was afforded all necessary due process rights is contained in the DHO report, the Rewritten Incident Report, and the Original Incident Report. See Rosario-Santiago v. Pliler, No. 21-CV-3202 (JPC) (RWL), 2022 WL 2991015, at *5 (holding that Petitioner was "afforded… all necessary due process rights" based on a DHO report and an incident report).

### D. The Sanctions Were Not Arbitrary

Petitioner argues that the DHO sanction of the loss of 41 days of good conduct credits is arbitrary and disproportionate to the evidence before the DHO. Dkt. No. 1, ¶ 15.

The Government cites 28 C.F.R. § 541.3 to affirm that 41 days disallowance of good conduct time "is specifically authorized by BOP regulations." Dkt. No. 15 at 16–7.

Sanctions, even if stringent, do not violate due process if they are within the range authorized by applicable regulations. See, e.g., Champley v. Baird, No. 3:11-CV-635 (VLB), 2012 WL 2872833, at *4 (D. Conn. July 11, 2012) (finding that

12

"stringent" sanctions within those authorized by federal regulations did not violate due process); Atkinson v. Willingham, No. 05-CV-673, 2007 WL 685168, at *5 & n.6 (D. Conn. Mar. 3, 2007) (observing that sanctions within the range authorized do not raise due process concerns). According to 28 C.F.R. § 541.3, the prohibited act 199 "most like 112" use of any narcotics is a "greatest severity level prohibited act," for which the maximum disallowance of good conduct time is 41 days. Because the sanction is within the range authorized by § 541.3 and the DHO properly found that Petitioner had committed the 199 "most like 112" prohibited act based on "some evidence," the severity of Petitioner's sanctions raises no due process concerns. See Champley, 2012 WL 2872833, at *4 (finding that the loss of 41 days of good time credit was "within the allowable limits" and "not excessive").

## IV.    RECOMMENDATION

This Court concludes that the DHO relied upon sufficient evidence in its determination that Petitioner committed the prohibited act of conduct "Code 199 most like 112," that Petitioner was afforded all requisite procedural safeguards, and that the sanction was within the range authorized by statute. For these reasons, this Court recommends that Petitioner's application be **DENIED**.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to

objections shall be filed with the Clerk of Court and on ECF.  Any requests for an extension of time for filing objections must be directed to Judge Rochon.  **Failure to file objections within fourteen days will result in a waiver of objections and will preclude appellate review**.  See Thomas v. Arn, 474 U.S. 140 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

SO ORDERED.

DATED:    New York, New York
          December 15, 2025

JENNIFER E. WILLIS
United States Magistrate Judge